IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
ANTHONY & JACKIE GRIFFIN,      )
individually and as parents    )
and guardians of JALEN, ASIA   )
& COURTNEY GRIFFIN, minor      )
persons,                       )
                               )
     Plaintiffs,               )
                               )
vs.                            )     No. 2:08-cv-02283-JPM-tmp
                               )
NAVISTAR, INC., d/b/a          )
INTERNATIONAL TRUCK &          )
ENGINE CORP.,                  )
                               )
     Defendant.                )
```

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' DEFECT AND UNREASONABLY DANGEROUS CONDITION CLAIMS**

Before the Court is Defendant's Motion for Summary Judgment (Docket Entry ("D.E.") 39), filed September 14, 2009. Plaintiffs responded in opposition on December 4, 2009. (D.E. 46.) Defendant filed a reply on December 18, 2009. (D.E. 49.) Defendant's motion raised the question of whether Plaintiffs' putative liability expert is competent to offer evidence in this matter. On February 3, 2010 the Court ordered the Parties to submit supplemental briefing on this issue. (D.E. 51.) Defendant filed a supplemental brief on February 24, 2010. (D.E. 52.) Plaintiffs responded on March 10, 2010. (D.E. 53.) Defendant filed a reply with leave of Court on March 24, 2010.

1

(D.E. 56.)  For the following reasons, the Court GRANTS Defendant's motion for summary judgment.

## I. Background

This products liability case arises out of an incident in which minor plaintiff Jalen Griffin was injured by a school bus manufactured by Defendant[1] and owned by Fayette County, Tennessee.  Jalen was crossing in front of the school bus when the bus struck him, causing severe injuries.  Plaintiffs' complaint is not precise with regard to which claims are being asserted, but the Court is able to discern the following: claims that the school bus was defective and/or unreasonably dangerous because it lacked certain mirrors; claims that the school bus was defective and/or unreasonably dangerous because it lacked a crossing control arm; a failure to recall claim; and a failure to warn claim.  (See Compl. (D.E. 1) ¶¶ 4-8.)

Defendant has moved for summary judgment only with regard to Plaintiffs' claims that the bus was defective and/or unreasonably dangerous because it lacked certain mirrors and a crossing control arm.  The Court will address each disputed claim in turn, but expresses no opinion with regard to the other allegations in the complaint.

---

[1] Defendant has asserted that Plaintiffs erroneously articulated Defendant's corporate name, but Defendant has not moved the Court to correct the docket.

**II. Standard of Review**

Initially, the Court notes that Plaintiffs' reliance on Tennessee's summary judgment standard is in error.  A federal court sitting in diversity applies the Federal Rules of Civil Procedure.  Reid v. Sears, Roebuck & Co., 790 F.2d 453, 459 (6th Cir. 1986).

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrate[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate.  Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must – by affidavits or

as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quotation marks and citation omitted). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for [that party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## III. Analysis

### a. Products Liability Under Tennessee Law

To establish a prima facie case of products liability under Tennessee law, a plaintiff must show that "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." Sigler v. Am. Honda Motor Co., 532 F.3d 469, 483 (6th Cir. 2008) (citation and quotation marks omitted). A plaintiff may show that the product was defective or unreasonably

4

dangerous, in contrast to the Restatement (Second) view, which requires that the product be "in a defective condition unreasonably dangerous to the user or consumer . . . ." Irion v. Sun Lighting, Inc., No. M2002-00766-COA-R3-CV, 2004 WL 746823, at *4 n.7 (Tenn. Ct. App. Apr. 7, 2004) (citing Restatement (Second) of Torts § 402A). Whether a product was defective or in an unreasonably dangerous condition is generally a jury question. Curtis ex rel. Curtis v. Universal Match Corp., 778 F. Supp. 1421, 1427 (E.D. Tenn. 1991) (citations omitted).

A product is defective if it was "unsafe for normal or anticipatable handling and consumption" when it left the manufacturer's control. Tenn. Code Ann. § 29-28-102(2). This standard turns in part on "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market . . . ." Brown v. Crown Equip. Corp., 181 S.W.3d 268, 281-82 (Tenn. 2005) (quoting Tenn. Code Ann. § 29-28-105(b)). "Consideration is given to the customary designs, methods, standards, and techniques of manufacturing . . . by other manufacturers . . . of similar products." Id. at 282 (grammatical marks omitted).

There are two tests under Tennessee law to determine whether a product was in an unreasonably dangerous condition when it left the manufacturer's control. "Under the prudent

5

manufacturer test, liability is imposed in circumstances in which a reasonably prudent manufacturer with knowledge of a product's dangerousness would not place the product in the stream of commerce." Id. (quoting Ray ex rel. Holman v. BIC Corp., 925 S.W.2d 527, 532 (Tenn. 1996)) (internal quotation marks omitted). As with the defect theory of liability, the jury must consider the customary design standards in the industry. Id. The prudent manufacturer standard also requires application of the so-called Wade-Keeton or risk-utility test, which turns on a number of factors: the product's utility; the likelihood and probable seriousness of injury from the product; the availability of an adequate and not unreasonably expensive substitute product; the user's ability to avoid danger by careful use of the product; the user's anticipated awareness of and ability to avoid the product's inherent danger because of general knowledge of that danger, its obviousness, or a warning; and the feasibility of spreading the loss by price-setting or the use of liability insurance. Ray, 925 S.W.2d at 532-33, 533 n.10 (citing Wade, On the Nature of Strict Tort Liability for Products, 44 Miss. L.J. 825, 837-38 (1973)).

Under the consumer expectation test, a product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

6

Ray, 925 S.W.2d at 530 (quoting Restatement (Second) of Torts § 402A, cmt. (i); Vincer v. Esther Williams All-Aluminum Swimming Pool Co., 230 N.W.2d 794, 798-99 (Wis. 1975)). Unlike the "seller oriented" prudent manufacturer test, the consumer expectation test is "buyer oriented." Id. at 531. "Under this test, a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury." Id. at 530.

### b. Plaintiffs' Allegations

Plaintiffs' complaint asserts that the bus had two design flaws. First, that the bus should have had mirrors that would have allowed the driver to see into an alleged blind spot in front of the bus. Second, that the bus lacked a "crossing control arm," a device made of metal or similar material that swings out from a bus's bumper to discourage individuals from walking closely in front of the bus. (Compl. ¶¶ 14, 15, 20.) Plaintiffs attempt to proceed as to both alleged flaws under the defect theory and the unreasonably dangerous condition theory. (See id. ¶¶ 4-8.)

### 1. Lack of Certain Mirrors

Plaintiffs have failed to put forth evidence in support of the contention in their complaint that the school bus was defective and/or in an unreasonably dangerous condition because it lacked certain mirrors. See Nix v. O'Malley, 160 F.3d 343,

7

347 (6th Cir. 1998) (unsworn allegations in a brief are insufficient to create a factual dispute on a motion for summary judgment).  The Court GRANTS summary judgment for Defendant as to those claims.  See Univ. of Pittsburgh v. Townsend, 542 F.3d 513, 522 (6th Cir. 2008) ("The moving party may satisfy [its summary judgment] burden by pointing out to the district court that there is no evidence underlying the non-moving party's case." (citing Gen. Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 412 (6th Cir. 2006))).

### 2. Lack of Crossing Control Arm

The only evidence Plaintiffs have submitted in support of their contention that the bus should have had a crossing control arm is the report of their putative liability expert, Dr. Arthur Yeager, DMD, MMH.  As noted above, Defendant's summary judgment motion raised a question as to Dr. Yeager's ability to testify in this matter, and the Court ordered the Parties to submit further briefing on the issue.  Defendant contends that Dr. Yeager is not qualified to testify as an expert, and also that his report does not adequately support Plaintiffs' claims.  Dr. Yeager's first affidavit did not establish how he is competent to testify in this matter, but Plaintiffs submitted a supplemental affidavit that attempts to articulate why he is qualified as an expert.  The Court finds it unnecessary to resolve whether Dr. Yeager is a qualified expert because even if

8

he is, his report does not create a material issue of fact with regard to Plaintiffs' prima facie case of products liability.

Viewed in the light most favorable to Plaintiffs, a jury could conclude from Dr. Yeager's report that school buses generally present some risk of injury to children, although the likelihood of injury is unspecified and the report does not explain if it refers to all types of school buses.  A jury could also find that crossing control arms reduce the risk to children, but only to a similarly unspecified degree.[2]  A jury could conclude that Defendant was aware in 1998 that school buses generally present a risk to children and that crossing control arms may reduce this risk.  At best, this evidence could support a finding that the bus could have been manufactured to be safer, but "[a] departure from the required standard of care is not demonstrated by simply showing that there was a better, safer, or different design which might have avoided the injury." Shoemake v. Omniquip Int'l, Inc., 152 S.W.3d 567, 573 (Tenn. Ct. App. 2003) (citing Kerley v. Stanley Works, 533 S.W.2d 80, 84 (Tenn. Ct. App. 1977)).  "A manufacturer is not required to incorporate the ultimate safety features in a product. . . . It

---

[2] The "personal communication" with an anonymous Kansas Department of Education official whom Dr. Yeager claims told him that he knew of no front-end *fatalities* where a crossing control arm was in use does not account for the possibility that *serious injuries* like Jalen's occurred while a crossing control arm was in use.

9

is not required to design a perfect or accident-proof product." Id. (citing Curtis, 778 F. Supp. at 1431 (E.D. Tenn. 1991)).

Under Tennessee law, Plaintiffs were required to do more than merely contend that the school bus could have been made safer. Under the consumer expectation test, Plaintiffs needed to submit admissible evidence, as opposed to conclusory allegations in their briefs, "that the ordinary consumer has an expectation regarding the safety of the product," as well as what that expectation is and why the school bus was dangerous beyond that expectation.[3] Jackson v. Gen. Motors Corp., 60 S.W.3d 800, 804 (Tenn. 2001). For instance, the plaintiff in Sigler v. American Honda Motor Co., 532 F.3d 468 (6th Cir. 2008) survived summary judgment under the consumer expectation test by submitting evidence that an airbag is a familiar product about which ordinary consumers have safety performance expectations, and that the airbag failed to perform as expected. See Sigler, 532 F.3d at 485-86.

Dr. Yeager's report does not attempt to establish such facts. At most, there is evidence that the school bus driver may not have seen Jalen and that Jalen was injured. A jury could not determine from these facts alone how consumers would expect a school bus without a crossing control arm to perform

---

[3] The Court declines to consider whether expert testimony is required in this instance to proceed under the consumer expectation theory because Plaintiffs offered no non-expert evidence of consumer expectations.

10

and whether in this instance the school bus failed to perform as an average consumer would have expected. See Shoemake, 152 S.W.3d at 573.

To proceed under the prudent manufacturer theory, Plaintiffs were required to put forth evidence pursuant to the Wade-Keeton or risk-utility test, Ray, 925 S.W.2d at 533, as well as evidence of "the customary designs . . . by other manufacturers or sellers" of school buses in 1998, Tenn. Code Ann. § 29-28-205(b). Dr. Yeager's report addresses only a few of these factors, and only in a cursory manner. Viewed in the light most favorable to Plaintiffs, Dr. Yeager's report suggests that school buses generally are useful products in that they carry millions of children to school, that there is some imprecisely-defined risk of injury to young children, and that school buses with crossing control arms may be an adequate substitute product.

Dr. Yeager's report fails to address the remaining factors or articulate why those factors are not relevant here. The report does not address the likelihood and probable seriousness of injury; although his report recounts absolute numbers of school bus fatalities in Kansas in the years prior to 1998, it does not explain the likelihood of fatality or the likelihood of non-fatal injury like that Jalen suffered, to say nothing of whether such data may be properly extrapolated to this matter.

11

Nor does his report address whether Defendant could have eliminated the allegedly unsafe character of the school bus without impairing its utility or unreasonably increasing its cost.  There is no discussion of whether the user of a school bus without a crossing control arm may be able to avoid the asserted risk by exercising care.  Dr. Yeager's report suggests that the school bus manual lacks a warning of the asserted danger, but there is no discussion of whether other warnings were given or whether the danger associated with the lack of a crossing control arm, as opposed to the danger presented by school buses generally, would have been apparent.  Nor is there any discussion of whether Defendant could spread the loss by price setting or carrying liability insurance.

Finally, the report does not explain whether other school bus manufacturers typically sold school buses with crossing control arms in 1998.  The report claims that "significant implementation" of such devices began "about 20 years ago," but there is no indication of what "significant" means and what the level of such "implementation" was in 1998.  (See Pl.'s Resp. to Def.'s Mot. for Summ. J. (D.E. 46) Ex. 1 at 5.)  Dr. Yeager's report is at best an incomplete and vague discussion of only a few of the relevant considerations under the prudent manufacturer test.  It is not sufficient evidence on which a jury could find that the school bus was defective.

There is a similar lack of evidence to support a finding for Plaintiffs on a defect theory of products liability. Dr. Yeager's report suggests that the school bus industry was aware in 1998 that school buses generally presented some degree of risk to children, but the report does not articulate the level of risk either generally or with regard to school buses without crossing control arms. Nor does the report address school bus industry design standards in 1998 in any concrete way. The report also contains almost no evidence from which a jury could assess the normal or anticipatable use of school buses, other than that school buses transport children to school and present an uncertain degree of risk to children.

Dr. Yeager's report fails to adequately address the relevant considerations under the Tennessee Products Liability Act. Plaintiffs have put forth no other evidence to support their allegations, other than contending the school bus driver may not have seen Jalen and that Jalen was injured, which does not establish liability. See Shoemake, 152 S.W.3d at 573. Defendant is entitled to summary judgment on Plaintiffs' claims that the school bus was defective and/or in an unreasonably dangerous condition because it lacked a crossing control arm. See Pride v. BIC Corp., 218 F.3d 566, 580-81 (6th Cir. 2000) (affirming the grant of summary judgment for the defendant where

the plaintiff failed to put forth sufficient evidence that the product was defective).

### c. Leave to Find an Alternative or Supplemental Expert

In their brief with regard to Dr. Yeager's qualifications, Plaintiffs request leave to supplement the record "if [the] Court feels that there is a need for additional expert proof to determine the viability of Plaintiffs' claims." (Pls.' Resp. to Def.'s Mot. to Exclude (D.E. 53) 6.) The Court DENIES this request for two reasons. First, when a party is presently unable to put forth evidence to oppose summary judgment, the proper method for temporarily staying the court's consideration of the summary judgment motion is to file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) stating why the party "cannot present facts essential to justify its opposition" to summary judgment. Fed. R. Civ. P. 56(f). Plaintiffs have not done this. Secondly, a party cannot present less than its best evidence in opposition to summary judgment in the hope that it will get a "second chance" to "shore up" its case. See Pride, 218 F.3d at 581 (quoting Weisgram v. Marley Co., 528 U.S. 440, 455 (2000)).

### IV. Conclusion

For the foregoing reasons, Plaintiffs' claims that the bus was defective and/or in an unreasonably dangerous condition because it lacked certain mirrors and a crossing control arm are

14

DISMISSED with prejudice.  The Court expresses no opinion with regard to Plaintiffs' other claims.

IT IS SO ORDERED this 8th day of July, 2010.

/s/ Jon P. McCalla_____
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE